At the Council, the first case today is 12-2372-12-2381, United States v. Jorge Reyes-Santiago Ms. Vazquez, good morning Good morning, Your Honors. May it please the Court, Assistant Federal Public Defender Vivian Marrero, on behalf of Mr. Reyes-Santiago We raise three issues on appeal, but we would like to first address the issue regarding the reasonableness of Mr. Reyes-Santiago's 421 sentence We are aware that a defendant that challenges the reasonableness of a sentence faces a high hurdle But the history in this case, and the sentencing judges' four initial orders, reveal that the motive in rejecting Mr. Reyes-Santiago's draft stipulation in the plea agreement was a subterfuge to mask the real motive in rejecting and opposing that sentence Counsel, did your argument depend on our accepting your argument that the judge was disingenuous about the motivation for the sentence? Yes, Your Honor Could I just, to follow on that, suppose we simply thought there wasn't a good explanation for the disparity Is that a possible outcome, or do we need to conclude that he was motivated by an impermissible consideration? Well, Your Honor, can you repeat the question, please? Yeah, is it enough for your argument to succeed if we were to conclude that the judge didn't give a reasoned explanation for why your client got the higher sentence relative to other people in the conspiracy? Or does your argument depend on us concluding that the judge had an impermissible motive for imposing the higher sentence on your client? I will go with the later. The judge had an impermissible motive. The disparity in this case was based on the rejection of the drug quantity stipulation in only two defendants and these two defendants were the ones that were acquitted in the Pajaros massacre trial. So, it's not regarding the criminal history comparison or the difference between the PSRs. The only two cases where the base offense level used in the PSR and the two imposed sentences that included the entire amount of the drug quantity in the conspiracy that lasted five years was in Mr. Reyes-Santiago's and the number one that was also acquitted in the Pajaros massacre. But that could be true, and also it could be true that there would be a reason for your client to be subject to a different drug quantity amount than other people in the conspiracy if he had a different role in the conspiracy than the other persons who were charged. So, as I understood it, Judge Buste, they thought that your client was the lieutenant to the number one figure in the conspiracy. That was not true of other people. So, why isn't that a good ground for the distinction? Well, we submit that when the judge mentioned that he was a lieutenant, it's not supported by the record. or the testimony of the witness that testified at the sentencing hearing. The PSR did not mention anything egregious that Mr. Reyes-Santiago's was different from any other manager or drug point owner. He, in fact, he was number nine. And the judge followed the drug quantity stipulations in the leaders, in three of the leaders of the conspiracy that were higher in rank than Mr. Reyes-Santiago. So, when he mentioned that he was a lieutenant, there's nothing in the PSR or in the testimony of the cooperating witness that says that he was, in fact, the right hand of number one. Well, one possible difference, if you could just explain it, it would be helpful to me, is that the, as I understand it, the particular housing project that your client was responsible for or was involved in was the housing development that the leader, number one, according to Judge Buste, was personally managing and that that was not true of the other defendants. Right? That the stash house, he says, was your client was involved with that stash house with number one in a way that no other member of the conspiracy was. So, could you just comment on that ground that Judge Buste gave for distinguishing your client? Well, I would disagree as to the fact that he was only, he was the leader in that stash house. He was in the indictment and the evidence presented by the witness and in the PSR says that he was, just as the other managers and drug point owners, he did run, in this particular case, he was allegedly the owner of the marijuana. And the record also mentions that he sometimes served as the runner of some sort of cocaine when the number one was not available. But runners are even lower in ranking than managers and drug point owners. So, I don't think that that differentiates the plaintiff's appeal enough in order for the judge to go and completely reject the drug quantity stipulated in the plea agreement and go from a base offense level of 28 to a base offense level of 38. That did not happen with anybody else in this conspiracy. Only as to number one. Yes. But isn't it commonplace in agreements like this that stipulated drug amounts often bear no relationship to reality? I mean, they are driven by the need to make a deal. And so, for a judge to be skeptical about that stipulated amount, that's not surprising or wrong, is it? It's not, Your Honor. It's not. But in this case, he did follow the drug quantity stipulations of leaders that were higher in rank than Mr. Reyes-Santiago. So, that's where the disparity comes into issue. Not in the total guideline, because the base offense level was stipulated regardless of the defendant's criminal history. He bumped it from 28 to a 38. And he got the highest sentence, 420 months. Could you just explain to me about how the conspiracy works? So, is your understanding that if you were a leader of the organization, so one of the five leaders, which I understand your client was not designated as one of those five leaders. But if you were one of those five leaders, here's two possibilities for how the conspiracy could work. You tell me which is right. One is, I'm a leader, but I only see a fifth of what the conspiracy does. I'm a leader in my sector. I do my housing project. That's it. Another possibility is all the leaders would have known everything the conspiracy was doing. Which is it? I mean, is it the idea that if you were a leader, you would have known the basic total quantity of the whole conspiracy? Yes, Your Honor. And what suggests that in the record that would help us come to that conclusion? Well, in the record, at least in the PSR, there is a table that says the entire amount of drugs that were distributed throughout the entire conspiracy, throughout all the housing projects, not only the marijuana, but the cocaine, crack, and heroin. And that table was used in the base offense level of Mr. Hilliard. Did each of the five leaders of the conspiracy share in the profits of all of the drugs of the conspiracy? Well, I submit that they did, Your Honor. And does the record show that? Yes, Your Honor. If you could help us with where we would find that, the best evidence of that from the record, from your point of view, that would be helpful. I don't know if you can do it in a follow-up letter or something, just for saving time. You don't have to do it right now, but that would be... Let's file a letter with the notified officer counsel in 10 days. I will. Thank you, Your Honor. And the government could respond in five days. Our position is that if this table with the entire drug quantity that was distributed during the five years that this conspiracy was included in Mr. Hilliard's trial, it was not at least considered in the base offense level of any other co-defendant in this conspiracy except for number one, which was also acquitted in the Fajardo's trial method. And was that table in the co-defendant's PSRs? Well, we don't know, but when the judge imposed the sentence, it followed the drug stipulated amount in the plea agreement. Therefore, if it was in the pre-sentence investigation report of the other co-defendants, that entire amount was not used to calculate the base offense level as the foreseeability of the drugs that were involved in the conspiracy. But this was the case of Mr. Reyes-Santiello. He started at a level of 38, Your Honors. Also, Your Honors, the judge stated for the record that rejecting the drug quantity stipulation in Mr. Reyes-Santiello's case would shock his conscience, but that is inconsistent with accepting that drug quantity stipulation for the leaders that are higher in rank than Mr. Reyes-Santiello. Also, he followed the drug stipulation amount in the owners and managers of the conspiracy, such as Mr. Reyes-Santiello, but rejected that stipulation. In the history of this case, I may have missed it in the briefing, what triggered the judge's particular interest in reevaluating the drug quantity in this case? What was the explanation for his particular interest and his insistence that a witness be brought forward to testify about the drug quantity? If I may, Your Honor, the judge initially stated that he wanted to hear evidence at the sentencing hearing regarding what happened at the Pajaro-Semaseker trial. He issued four orders as to that. Then, thereafter, he changed his mind and said that he was not going to consider the Pajaro-Semaseker, but still he wanted to hear the testimony of the witnesses in regards to the drug quantity stipulation. That's when the parties were made aware that he was going to use that witness in order for the witness to testify as to the drugs that were distributed throughout the entire span of the conspiracy. Was there any suggestion that the judge was concerned that your client may have been involved in that notorious shooting in front of the courthouse in Otorre? Well, he was not involved. However, there was one order that he makes reference to that incident that he was included in the order, but he had nothing to do with it. Mr. Reyes-Santiago had nothing to do with it. The only issue was the Pajaro-Semaseker trial. That wasn't the question. The question was whether the judge somehow joined both issues, both questions. Yes, Your Honor. Do you want to answer it? I believe that he did at one point. Why do you say that? Because he wanted to, in the orders that he issued, he wanted to hear testimony of both incidents, of the Pajaro-Semaseker trial and of the Pitupo's murder that occurred in front of the courthouse, and didn't differentiate who was involved in the Pitupo's murder or in the Pajaro-Semaseker trial, just the three defendants. How does that appear in the record? It's in the orders, Your Honor. He issued an order as to that effect. All right. Would you please point out where it appears? Yes, Your Honor, I will. So if I follow, there were only two people in the conspiracy that were sentenced on the basis of the drug quantity being the entirety of the conspiracy, that's number one and your client? Yes, Your Honor. Okay, I think your time is up. Thank you. Thank you. Cass, good morning. Good morning, Your Honor. May it please the Court, this is the U.S. Attorney Luke Cass on behalf of the government. Your Honor, we have a Type B plea agreement in this case in which the stipulated amount was 2.5 to less than 3.5 kilograms of cocaine. The PSR comes back and there's, when you do the conversions to marijuana, over 241,000 kilograms of marijuana. I would like to begin by disputing Just so I'm clear, that's true of the PSRs of the other co-defendants? I'm not sure if it's true, if that calculation was included. But even if the calculation was, the calculation would be the same for the drugs listed. So the only possible difference is that the actual calculation of the conversion was done, not the evidence of the amounts. That would have been the same in all the PSRs for all the co-defendants. Yes, Your Honor. The PSR lists in the footnote, I believe it's page 17 or 18, that the estimate is based on a conservative estimate of the Virgilio Davila project alone. And in some ways, this is an atypical drug conspiracy case because it doesn't involve just one housing project. It was four separate housing projects in Bayamón as well as other points. Just to refute the contention that Judge Luce somehow used the Pajaros massacre, that was his ultimate reason for doing this, it helps to look at the chronological sequence of events. November 12, 2010 is when Mr. Reyes-Santiago changed his plea. The PSR comes out on February 1, 2012 and lists those drug amounts, the same drug amounts. An order comes out, it's docket entry 2595, February 27, 2012, in which he says, after careful consideration, the court is not going to consider either the Petufo murder, which I believe is the one that he was killed outside the courthouse, or the Pajaros massacre. That will not weigh into the court's thinking at all. And I think that statement and the judge's repeated statements during the sentencing hearing is entitled to some weight. You should take them at his word when he says that. Why would that be brought up in the first place? Well, Your Honor, this is how it was brought up. At the end of the change of plea hearing, Judge Fuste asks about the defendant's criminal history. I believe that's the first time it comes up. And he makes some comments at the end of the change of plea that it's shocking, this criminal history. And the reason the drug amounts became relevant is because the defendant, he signed in his factual statement to the plea agreement that he was the owner of the Boston Red Sox. However, at the change of plea hearing, he refuted that. So the judge says, in order for me to exercise some sort of meaningful sentencing discretion, we're going to address two issues at sentencing, one being the defendant's role in the drug conspiracy, and two, the drug amounts that are properly attributable to him. And that's why he ordered the United States to see the witness to address those two issues. So just like the precipitating cause of being interested in it was a gap between the allegation in the PSR that he owned the Boston Red Sox and the defendant saying, no, I didn't? It wasn't in the PSR at that point because it hadn't come out yet. It was his unwillingness to accept that at the change of plea hearing, Your Honor. So had he accepted that he was the owner, the judge would have accepted the lower quantity. But because he disputed that he was the owner of it, he is now charged with the higher quantity? I'm not sure if he would have accepted it just on that basis, Your Honor. He seemed interested in the defendant's criminal history and in his role in the offense. Independent of that? Independent of that. So I can't say for sure whether. Could you then explain a little bit why he wasn't interested in the other defendant's stipulations? Well, Your Honor, when this issue came up, when we sat Mr. Burgos, he gave testimony in which he said that Reyes Santiago was essentially a lieutenant to the number one, Mr. Colón de Jesus. And he organized shifts. He found workers. He ran a stash house. And he kept the drug conspiracy essentially running for the four different housing projects. He essentially was the COO of this organization, ran it on a daily basis. He also delegated the position. If you wanted a job, he would hire you. So essentially, Your Honor, and that was one of the reasons he gave when he was explaining the sentence. He goes, this is a big-time supervisor in a big-time drug trafficking organization that took up a huge part of the territory of Bayamón. And he repeated that, that it was based on his level of responsibility and the size and scope of the organization. And how do you explain the other five leaders, why they would be treated as less important than somebody who was not indicted as a leader? Well, Your Honor, in the appendix, it makes reference to some of these managers and drug point owners. And a lot of times when the case is being indicted, you have one through nine, and further evidence comes out later that he actually has greater responsibility than you initially thought he had, which I believe is the case with Mr. Reyes Santiago. Five, for example, one of the gentlemen who was … No, no, I have a slightly different question. I understand that evidence may come out that he had greater responsibility than you initially thought he had. My question is, what is the basis for putting he had greater responsibility than for the other five people who were charged as leaders of the conspiracy? Well, the fact that, Your Honor, that he was working directly with the leader of the organization and the level of responsibility that was entrusted to him would be, I guess, the response. Is this something that you knew when the plea agreement was entered into? I'm sorry, Your Honor? Did you know this information at the time you entered into the plea agreement? Your Honor, I was not the trial assistant in this case. Well, I didn't say you personally. I'm talking about the United States. Did we know he was a higher level? I don't believe we did. I'm not sure, Your Honor. I can't … Well, the record shows that you must have because you had the witness waiting outside that you brought in to provide the testimony to the government. What's his responsibility? The government said, yes, we're ready to give you all that evidence. So you must have known he was this level. Yes, Your Honor. I believe the trial assistant did know that. This witness was used once before for another sentencing. I believe it was the leader. That was the only other time that he was seated and said these issues. I'm curious. When you people enter into a plea agreement, is there any duty to defend that plea agreement? Yes, Your Honor. There is. There's an affirmative duty to recommend what's being promised. I think we see that in the sentencing transcript in this case where on five separate occasions, the AUSA states, we stand by the plea agreement, Your Honor. We stand by the plea agreement. And at one point, actually, Judge Pustay says, no one can say you're breaching because, in essence, I'm forcing you to see this witness. I want to know about these issues, and I'm making you do this. So short of that, Your Honor, we actually didn't answer the motion for reconsideration until we were ordered to do so, and even then we stated that we do stand by the plea agreement. So there's numerous occasions in which we said that. I'm not sure. It's a difficult position to be in when you have these twin responsibilities to answer the court and also abide by your duties. Was there any discussion between the prosecution and the judge as to how the interrogation, the questioning of the witness should take place, whether the judge, given his concerns, should conduct the questioning or whether your office should conduct the questioning? The Assistant Federal Public Defender actually objected to the judge's preferred method of having the AUSA ask the questions, and he overruled that objection and made us ask the questions. It was your preference to conduct the inquiry rather than have the judge do so? I don't think we – Your office's preference. I don't think it was a preference, Your Honor, but I believe it was our understanding that we would seek the witness and ask the questions, that we would control the method of interrogation. And it was limited – excuse me. Go ahead. I was just saying the judge made sure that it was – he only wanted to hear about roll and drug amounts before the actual questions took place. And how long did the questioning go on for? All right. I believe it's pretty substantial. It's about 30 pages of the sentencing hearing transcript. How long time was that? Was that an hour of questioning or is that – I believe it was less than an hour, Your Honor. Less than an hour. And there's various points at which the defense counsel on cross-examination is asking certain questions and the prosecution objects. Yes, Your Honor. I noticed that in the transcript. How is that consistent with just providing the evidence to the judge? I don't remember the specific basis for the objections, Your Honor, but I would agree it probably would have been better not to object, to affirmatively contest. And why do you think that would have been better? Just because it would be more consistent and akin with our duties to follow and abide by the terms of the agreement. There's a certain point where we have to fulfill our duty to the court, but I'm not sure the objection was on a substantive issue. Well, by that logic, when defense counsel sought reconsideration of the sentence, you probably shouldn't have opposed the motion for reconsideration, which you did. Isn't that correct? We didn't, Your Honor, actually, until the court ordered us to oppose it. He actually ordered the government to respond to it.  Well, he didn't order you to oppose it. He just ordered you to respond. We actually said we stand by the plea agreement, and we laid out the basics for the various. There's one thing to actively oppose it, but to say that errors were committed is another one. I notice my time has concluded. Can I just hold on the sentence, the credit for the 15 months? Yes, Your Honor. As I understand your brief, your position is that he got the credit for the year. He got credit for the year, yes, Your Honor. But that was a separate argument for the year of jail time. He was also asking for credit for the nine months served and the six months served for the prior revocations of the supervised release. Is that right? I believe it is, Your Honor. Okay. What is your argument as to why he shouldn't get the credit for those 15 months, setting aside the year? I just didn't follow what the argument would be. Because it seems like under the statute, there's a cap, and you get the credit for the time served, even though that statute has now been changed. Is there some argument I'm missing? No, Your Honor. I believe my understanding of the argument was that they had used the wrong guideline that was in effect at the time, which was the 24 to 36 range. My understanding was he was sentenced two years consecutive, and he received a year for credit. I can file a supplemental on this issue, Your Honor, if you want me to address it in more detail. Because if he wasn't credited nine to 15, certainly we'll take a closer look at that. Okay. Would that be helpful? Yes, Your Honor.